Aaron Abadi, Plaintiff
82 Nassau Street Apt 140
New York, NY 10038
Tel: 516-639-4100
Email: aa@neg.com

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

AARON ABADI,

      Plaintiff

V.

CAESARS ENTERTAINMENT, INC.,

& NUMEROUS UNNAMED

EMPLOYEES  & STAFF

OF CAESARS

ENTERTAINMENT, INC.,

      DEFENDANTS.

CASE # _____

**ORIGINAL COMPLAINT**

JURY TRIAL REQUESTED

February 1, 2022

Plaintiff, Aaron Abadi, brings this action pro se, against defendants, Caesars Entertainment, Inc. ("Caesars"), alleging that defendant and its employees discriminated against him due to his disability, conspired to deny him his civil

rights.  Plaintiff requests injunctive relief, declaratory relief, compensatory damages, punitive damages, and any other relief that the court shall determine, and/or any relief that will become apparent and appropriate upon the exchange of discovery.

## PARTIES

1)    Plaintiff, Aaron Abadi, resides in the City of New York. His address is 82 Nassau Street, Apt. 140, New York, NY 10038.

2)    Caesars' headquarters is located at One Caesars Palace Drive, Las Vegas, NV, 89109 United States, Phone: (702) 407-6000.

3)    Plaintiff reserves the right to add numerous unnamed employees and staff as defendants, as their names and contact information become  available during discovery.

## JURISDICTION & VENUE

4)    This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. 1331, which provides district courts with jurisdiction over civil actions arising under the United States Constitution or laws of the United States. Amongst other claims, Plaintiff is alleging violations of the federal ADA laws 42 U.S. Code § 12182, and 42 U.S. Code § 1985 - Conspiracy to interfere with civil rights.

5)     This Court has jurisdiction under 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000.

6)      This court has personal jurisdiction under 28 U.S.C. § 1391 (b) 1 & 2,

although Plaintiff is a resident of New York City, the defendant, Caesars is located

in Las Vegas, Nevada.

7)      Venue is proper pursuant to 28 U.S.C. 1391(b) because the events

giving rise to the allegations in this complaint occurred in this district.


## FACTUAL ALLEGATIONS

8)      Defendant Caesars owns and operates a group of casinos and resorts

throughout the country.

9)      The Covid-19 virus that arrived from Wuhan, China, spread

throughout the world, causing significant death and hospitalizations, during the end

of 2019, though 2020, and continuing in 2021.

10)     The Center for Disease Control ("CDC") announced guidance for

requiring all people to wear masks in public places. The guidance varied as the

time progressed.

11)     Ultimately, the CDC guidelines, while allowing the relaxing of mask

rules in most places, they continued to require it in certain venues.

12)     The Governor of the State of Nevada issued Directive 024 in June of

2020 (Exhibit 1 Page 2), requiring all people to wear masks in public places.

13)     This was followed and reinforced by Directive 047 in July of 2021 (Exhibit 2 Page 9), continuing to require the same.

14)     Both directives clearly exempt people with disabilities who cannot wear a mask.

15)     Throughout this pandemic, most, if not all mask mandates, mask guidance, and related laws, included wording to remind people that children under 2 years old and people with a disability that causes that the person cannot wear a mask, are exempt. The ADA put out a guide elaborating on the types of disabilities that would not be able to wear masks. It's named, "The ADA and Face Mask Policies" (Exhibit 3 Page 13). It says, "Some people with autism are sensitive to touch and texture. Covering the nose and mouth with fabric can cause sensory overload, feelings of panic, and extreme anxiety." It recommends that they should not wear a mask.

16)     Plaintiff, Aaron Abadi, while he does not have autism, he does have sensory processing disorder, which is the actual disorder that an autistic child would have if sensitive to touch to a point of possibly causing sensory overload.  It is listed on his medical records. Attached as Exhibit 4 page 37 & Exhibit 5 page 39, are a doctor's letter and a copy of the medical chart from plaintiff's doctors, confirming this.

17)    Plaintiff states that he had this condition his entire life.  He could not wear glasses, sunglasses, baseball caps on his head and face, as it will cause a serious sensory overload.  He also has difficulties wearing neckties and starched shirts. Anything around the face or head is a serious problem.  This is not simply a discomfort.  Our senses send messages to our brains, and when there's a dysfunction in those messages, the brain gets the wrong message.  When I wear a mask or any of those other items I mentioned, it starts off with extreme discomfort and pretty quickly turns into unbearable, where I will rip it off without any regard of the consequences.  It is also coupled with headaches and other irritation. I cannot wear a mask at all.

18)    The Doctor's letter confirms that the Plaintiff already had Covid and was no longer contagious. The CDC states that Covid reinfection is rare (Exhibit 6 Page 45). Under these circumstances, Plaintiff argues that without obvious symptoms, he cannot be considered a direct threat, which is defined as a significant risk, when it comes to disability laws.  It is certainly a good idea to increase precautions, but it doesn't create a direct threat, and therefore it doesn't allow discrimination.

19)    The medical community and including the CDC, the NIH, and the WHO, evolved in regards to their expectations of the value of a typical face mask in protecting people from Covid 19. Even to date, there is no clear peer-reviewed

study that can confirm the importance and benefits of wearing masks as is being worn currently. The CDC themselves confirm that we do not have real evidence (Exhibit 7 page 48). Most of us say, it probably cannot hurt, although some studies say that it can. Plaintiff is not looking to adjudicate that issue, if not requested to by the court, or the Defendant.  Suffice it to say that the typical mask is questionable as to its protection.

20)     Defendant Caesars and the unnamed staff discriminated against Plaintiff, conspired to discriminate, and did not attempt to stop the discrimination.

21)     There were many employees, staff, executives, and even attorneys that were part of this conspiracy and/or participated in the discrimination. During discovery, we will ask for that information, and add those defendants to this action.


**THE SPECIFIC INCIDENTS**

22)     **Caesars Palace Las Vegas Incident:** On June 3rd, 2020, I stayed at the Caesars Palace at 3570 S Las Vegas BLVD in Las Vegas, and I wanted to play at the blackjack tables at the casino.

23)     I was told that I cannot play without a mask.  I asked to speak to a manager.  The manager came over and said that I cannot play without a mask.

24)     I explained that I have a medical disability and cannot wear a mask. I pointed out that federal and state laws require you to accommodate me. They said, "Sorry, but if you do not wear a mask, you cannot play.

25)     I later emailed customer service, who confirmed the same. (email correspondence Exhibit 8 page 52) I was denied access and discriminated against due to my disability.

26)     I filed a complaint with the Nevada Commission on Human Rights, but I have yet to hear back from them.


27)     **Harrah's Kansas City Incident:** Harrah's is a location owned by Caesars. On August 19, 2021 I booked a hotel room at Harrah's and after checking in, I proceeded to go to the casino to play for a bit.

28)     As I explained, I have a medical disability, specifically a sensory integration disorder. This causes me not to be able to wear a mask or a face shield. I showed security and hotel management my doctor's letter. I spoke to Tyler in security.

29)     He refused to allow me to even enter the casino.  I explained the federal and state laws. He said that's all irrelevant, as Harrah's is a private entity.

30)    On the following morning I also spoke to Melanie the hotel manager, and she said the same thing as the security guy in a nicer way. (At 10:47 AM.) She said "We are a private property and we can make up any policy we want."

31)    I was very clear to both of them that I had a specific medical disability that causes me not to be able to wear a mask. I showed them the letter from my doctor and offered to show them the laws. They both told me that all that is irrelevant, because they're a private company and they can make whatever policy they want.

32)    I said that's not true. You're a public accommodation and there are specific federal and State laws requiring you not to discriminate against a person with a medical disability.

33)    When I said that to Tyler, he got rude and told me to get to my room. Melanie was a bit more polite, but completely didn't agree with me.  I contacted their attorney, Matt Aiazzi, who didn't seem interested in educating them either. I had to leave without being allowed to even enter the Casino. Letter to the attorney and response is attached as Exhibit 9 Page 55.

34)    I had been traveling from Colorado, driving for a very long time, heading to New York, and I deliberately stayed at their hotel in order to play for a while at the casino. Playing blackjack relaxes me. I was denied that, ridiculed, and made to look like an idiot.

35) **Rio All-Suites Hotel Incident:** I booked several nights at this hotel which is owned by Caesars for a few nights. I planned to stay at Rio All-Suite Hotel from Oct 18-21, 2021. My reservation number is ZKSCK.

36)     As I was being banned by their casinos, and not allowed to enter, this time, I emailed them in advance, requesting to know if they will allow me to enter and play without a mask.

37)     Again, I was denied (response from Caesars Exhibit  10 page 64), as they believe they are not required to follow the laws.

38)     To this day, I am not welcome in any of the Nevada casinos and/or in the Kansas City, Missouri location.

## INJURIES & AFFECTS

39)     The losses are financial, as I was denied basic services and privileges that all people have access to. Additionally, the emotional toll and anxiety caused of being discriminated is significant, and probably much more than the financial.

40)     Every year I spend many nights in a Caesars hotel/casino. For the last year and a half, I was denied that right.  I usually get free rooms complimentary due to my rewards account, so I was denied access and denied my use of my complimentary rooms.  If a typical room is worth $100 per night, then that value was taken from me, too.

41)     The benefits of utilizing public facilities have a value too.  For over 500 days I was denied access to their many locations, certainly more than ten.

42)     Disabled people have a right to not be discriminated against.  Human beings have a right to be treated like human beings.  My rights were stripped from me.

43)     The humiliation, disgrace, and shame to be publicly treated like a common criminal in front of everyone, rather than be treated with respect and compassion is more hurtful than any money in the world can compensate for.

## CAUSE OF ACTION

## COUNT ONE

44)     **Discrimination on the basis of disability in a public accommodation.** For the first count, Plaintiff alleges that defendants violated the Americans with Disabilities Act of 1990 on multiple occasions, specifically ADA Title III 28 CFR Part 36 - Nondiscrimination on the basis of disability by public accommodations and in commercial facilities.

45)     Plaintiff incorporates by reference the facts alleged in the earlier paragraphs for this count and for all counts listed thereafter.

46)    Plaintiff alleges that Defendants discriminated against him due to his disability and did not allow him equal access to the public accommodations described herein. Even to this date, the day of this being filed, Plaintiff was denied access to all the locations mentioned, and that denial continues at the time of this filing.

47)    In defining public accommodation, it clarifies the following: 28 CFR Part 36 § 36.104 "Place of public accommodation means a facility operated by a private entity whose operations affect commerce and fall within at least one of the following categories…Place of lodging… A restaurant, bar, or other establishment serving food or drink…A motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;  An auditorium, convention center, lecture hall, or other place of public gathering… A park, zoo, amusement park, or other place of recreation… etc." As per this definition, the Caesars facilities all fall under the term "public accommodations."

48)    The ADA states § 36.201(a) "Prohibition of discrimination. No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity who owns, leases (or leases to), or operates a place of public accommodation." See § 36.202 for a breakdown of the various types of illegal discrimination, including:

(a) denial of participation, (b) participation in unequal benefit, & (c) separate benefit. The above factual allegations show multiple violations of these laws.

49)     Caesars has a stated policy that all people entering their locations must wear masks.  This was repeated to the defendant constantly. When I described my disability and pointed out that the law says you need to accommodate me, I was told by many of the employees, "Caesars is a private company and they can create their own policy."

50)     ADA law requires the Defendants to modify their policy to accommodate a person with a disability when they cannot wear a mask.  42 U.S.C. § 12182(a).[3] "The ADA defines discrimination to include: [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations...."

51)     In clarifying the definition of disability, 28 CFR § 36.105 (1) says "Physical or mental impairment means: (i) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as: Neurological, musculoskeletal, special sense organs, respiratory

(including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine."

52)     Plaintiff's disorder affects the body system related to the sense of touch, specifically, and is included in the above definition of disability. Touch is the ability to sense pressure, vibration, temperature, pain, and other tactile stimuli. These types of stimuli are detected by mechanoreceptors, thermoreceptors, and nociceptors all over the body, most noticeably in the skin. These receptors are especially concentrated on the tongue, lips, face, palms of the hands, and soles of the feet.

53)     While the Defendant's employees have suggested to Plaintiff that the reason of their discrimination is for safety, ADA Law § 36.301 (b) says, "A public accommodation may impose legitimate safety requirements that are necessary for safe operation. Safety requirements must be based on actual risks and not on mere speculation, stereotypes, or generalizations about individuals with disabilities." This requirement of actual risk is a very similar concept to the next paragraph, discussing direct threat.

54)     A public accommodation can deny access when there's a "direct threat." § 36.208 (b) "In determining whether an individual poses a direct threat to the health or safety of others, a public accommodation must make an individualized assessment, based on reasonable judgment that relies on current

medical knowledge or on the best available objective evidence, to ascertain: The nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk." Defendant seemed to have believed that Plaintiff coming in without a mask will pose a direct threat.

55)    If the CDC believed that anyone without a mask was a "direct threat," they would have been careless and negligent in their duties to allow for such exemptions at all.  Even for eating and drinking, how can you kill people just because you want to eat and drink?! Obviously, the idea was to reduce the overall spread, and not to suggest that all people are a direct threat.

56)    It is understood from the previous paragraphs that a person, even without already having Covid, is not considered a direct threat or an actual risk, without any symptoms, and without any indication that they may have any disease, as the rate of transmission and the statistics showing the risk factor are relatively low, when avoiding people who are carrying the disease, maintaining a reasonable distance in general, and utilizing proper cleanliness.  Certainly, though, a person who already had Covid, as is the case with this Plaintiff, should not be considered a direct threat or an actual risk without clear symptoms, as the CDC confirms, "Covid reinfection is rare." (as shown above)

57)     The idea that masks are actually effective in reducing a direct threat, is debatable, at best. If an entity discriminates against a person with natural immunity without a mask, treating him different and/or less than another person without natural immunity, but with a mask, that is discrimination.  If the fellow with the mask is not considered a direct threat, then the other fellow **with natural immunity without a mask is less of a threat.**

58)     The Supreme Court confirms that fear of a contagious disease in itself is not sufficient grounds to permit discrimination. "Allowing discrimination based on the contagious effects of a physical impairment would be inconsistent with the basic purpose of § 504, which is to ensure that handicapped individuals are not denied jobs or other benefits because of the prejudiced attitudes or the ignorance of others." School Bd. of Nassau Cty. v. Arline, 480 US 273 - Supreme Court 1987. See the entire decision.

59)     This Court may grant relief: As in § 36.504 (a) "Authority of court. In a civil action under § 36.503, the court - (1) May grant any equitable relief that such court considers to be appropriate, including, to the extent required by the Act or this part - (i) Granting temporary, preliminary, or permanent relief; (ii) Providing an auxiliary aid or service, modification of policy, practice, or procedure, or alternative method…"

## COUNT TWO

60)   **Conspiracy to interfere with civil rights:** All the Defendants conspired to interfere with Plaintiff's civil rights, by conspiring to deprive him of his right to utilize their public accommodations, and by conspiring to deny him his rights in all the counts listed herein.

61)   42 U.S. Code § 1985 - Conspiracy to interfere with civil rights. "…if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

62)   Defendants denied the Plaintiff access to the Caesars facilities, and discriminated against him due to his medical disability.

<u>**COUNT THREE**</u>

63)   **Neglecting to Prevent Interference with Civil Rights.** Defendants were aware of the conspiracy to interfere with the civil rights of the disabled by banning Plaintiff and similarly disabled from receiving health care and from entering their facilities, but did nothing to stop it. These Individual Defendants possess the power to stop the conspiracy today but have not taken any action to do so. This claim is thus ongoing and the statute of limitations does not apply.

64)    "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case…" 42 USC § 1986.

65)    Section 1986 creates a remedy against persons whose acquiescence make conspiracies to interfere with civil rights possible.

66)    Therefore, all to-be-named Individual Defendants in addition to the listed defendants are personally liable to Plaintiff for neglecting to prevent interference with his civil rights.


## COUNT FOUR

67)    **Discrimination in Public Accommodations: In Harrah's Kansas City, Missouri, Caesars is in violation of Missouri State Law** as follows:

68)    Missouri - Title XII PUBLIC HEALTH AND WELFARE Chapter 213, 213.065. Discrimination in public accommodations prohibited, exceptions. — 1. "All persons within the jurisdiction of the state of Missouri are free and equal

and shall be entitled to the full and equal use and enjoyment within this state of any place of public accommodation, as hereinafter defi ned, without discrimination or segregation because of race, color, religion, national origin, sex, ancestry, or disability. 2. It is an unlawful discriminatory practice for any person, directly or indirectly, to refuse, withhold from or deny any other person, or to attempt to refuse, withhold from or deny any other person, any of the accommodations, advantages, facilities, services, or privileges made available in any place of public accommodation, as defined in section 213.010 and this section, or to segregate or discriminate against any such person in the use thereof because of race, color, religion, national origin, sex, ancestry, or disability."

69)    Defendants are in violation of this law, as they discriminated against Plaintiff by not allowing him access to the public accommodation.

## COUNT FIVE

70)    **Aiding, abetting, inciting, compelling, and/or coercing the commission of prohibited discriminatory acts,** as per Missouri State law.

71)    Missouri - Title XII PUBLIC HEALTH AND WELFARE Chapter 213, 213.070. Additional unlawful discriminatory practices. — 1. "It shall be an unlawful discriminatory practice for an employer, employment agency, labor organization, or place of public accommodation: (1) To aid, abet, incite, compel, or coerce the commission of acts prohibited under this chapter or to attempt to do so."

72)     Defendants violated this law by aiding, and enforcing the illegal discrimination.

## **COUNT SIX**

73)     **Discrimination under a program receiving federal funds. Defendants are in violation of The Rehabilitation Act ("RA") of 1973** § 504, 29 U.S.C. § 794 (a), which says, "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."

74)     Caesars has been a recipient of significant federal funds during the Covid pandemic.  This will be proven after appropriate discovery.

75)     The discrimination issues are similar to those presented in the first count. "Although there are subtle differences between these disability acts, the standards adopted by Title II of the ADA for State and local government services are generally the same as those required under section 504 of federally assisted programs and activities." Henrietta D. v. Bloomberg, 331 F. 3d 261 - Court of Appeals, 2nd Circuit 2003.

76)   These laws apply to the following entities: "(3)(A) an entire corporation, partnership, or other private organization, or an entire sole proprietorship— … or (ii) which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation;" These would include the defendant.

77)   Plaintiff alleges that Defendant discriminated against him due to his disability and did not allow him equal access to the public accommodations and as described herein.

78)   The remedies available to the court for both the ADA violations and the Rehabilitation Act violations are up to the court's discretion to award "such relief as may be appropriate," (42 U. S. C. § 2000c–7) as described in Barnes v. Gorman, 536 US 181 - Supreme Court 2002, "Section 202 of the ADA prohibits discrimination against the disabled by public entities; § 504 of the Rehabilitation Act 185*185 prohibits discrimination against the disabled by recipients of federal funding, including private organizations, 29 U. S. C. § 794(b)(3).

79)   Both provisions are enforceable through private causes of action. Section 203 of the ADA declares that the "remedies, procedures, and rights set forth in [§ 505(a)(2) of the Rehabilitation Act] shall be the remedies, procedures, and rights this subchapter provides" for violations of § 202. 42 U. S. C. § 12133. Section 505(a)(2) of the Rehabilitation Act, in turn, declares that the "remedies,

procedures, and rights set forth in title VI of the Civil Rights Act of 1964 . . . shall be available" for violations of § 504, as added, 92 Stat. 2983, 29 U. S. C. § 794a(a)(2). Thus, the remedies for violations of § 202 of the ADA and § 504 of the Rehabilitation Act are coextensive with the remedies available in a private cause of action brought under Title VI of the Civil Rights Act of 1964, 42 U. S. C. § 2000d et seq., which prohibits racial discrimination in federally funded programs and activities."

## COUNT SEVEN

80)   **Civil action for deprivation of rights.**

81)   42 U.S. Code § 1983 - "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

82)   Defendant used the State regulations as he determined its applicability to deprive Plaintiff of his civil rights, and is therefore liable for this statute.

## COUNT EIGHT:

83)   **Nevada State Law NRS 233 discrimination in a public accommodation.**

84)   Nevada State Laws mimic federal laws in regards to disability discrimination.

85)   Defendants violated Nevada State Law by discriminating against Plaintiff due to his disabilities, in a public accommodation.

86)   There are substantial monetary compensations available within the state law.  Defendants are in violation of these laws.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, Aaron Abadi, respectfully requests judgment in his favor, as follows:

A.   Compensatory damages in an amount to be determined at or before trial;

B.   Punitive damages as determined by the Court for the multiple counts where it is applicable;

C.   Declaratory relief, to clarify and declare that Plaintiff is exempt from wearing a mask and should be allowed to go anywhere and everywhere without

harassment or discrimination; and that disability laws did not go into abeyance until Covid disappears.

      D.     Injunctive relief requiring Caesars to notify every employee, and staff member that disability laws are applicable to all, and that they are all required to become familiar with those laws.

      E.     Injunctive relief to require Defendants to allow Plaintiff to enter all its facilities.

      F.     Such other and further relief as the Court deems just and appropriate.

I understand that a false statement or answer to any question in this complaint will subject me to penalties of perjury. I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT. See 28 U.S.C. § 1746 and 18 U.S.C. § 1621.

I agree to provide the Clerk's Office with any changes to my address where case related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

      Respectfully submitted February 1, 2022,

      /s/ Aaron Abadi
      AARON ABADI, Plaintiff
      82 Nassau Street Apt 140
      New York, NY 10038
      516-639-4100
      Email:  aa@neg.com

## **DEFENDANT'S ADDRESS:**

CAESARS ENTERTAINMENT, INC.
One Caesars Palace Drive
Las Vegas, NV, 89109
Phone: (702) 407-6000